FILED
2024 Mar-21  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**SANTOSH PILLAI,**

    **Plaintiff,**

**v.**                    **Civil Action No.:**

**RONNY LEE HOLLINGSWORTH;**

    **Defendant.**

## COMPLAINT

COMES NOW, the Plaintiff Santosh Pillai ("Plaintiff") and files this following causes of action against the defendants as named herein:

### JURISDICTION

1.    The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.  This matter involves a cause of action that arises in part pursuant to federal statutes including 15 U.S.C § 77a.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

### VENUE

2.    Venue is proper in this Court pursuant to 28 U.S. Code § 1391 because the majority of the acts and omissions alleged against the named defendant occurred within the District.

**PARTIES**

3.      The Plaintiff Santosh Pillai ("Plaintiff Pillai") at all times relevant and material was a resident of Jefferson County, Alabama.

4.      Defendant Ronnie Lee Hollingsworth ("Defendant Hollingsworth") at all times relevant and material did communicate with Plaintiff Pillai using electronic mails, text messaging and telephone means.   Those communications originated and/or were received in this venue.

**FACTUAL ALLEGATIONS**

5.      Plaintiff Pillai first heard of Defendant Hollingsworth from a then-coworker. Defendant Hollingsworth promoted himself as a teacher of investing money into cryptocurrency based securities.

6.      Plaintiff Pillai looked up Defendant Hollingsworth's public Instagram Profile and watched several of Defendant Hollingsworth's YouTube videos.

7.      On both his Instagram page and YouTube Channel, Defendant Hollingsworth promoted the concept of "coin staking".

8.      As a result of Defendant Hollingsworth's online promotions, on May 24, 2022, Plaintiff Pillai reached out to Defendant Hollingsworth via direct message on Instagram to learn more about his experience with cryptocurrency.

9.      Defendant Hollingsworth responded back within 24 hours via a few texts on Instagram and began explaining to Plaintiff Pillai that Plaintiff Pillai could make

large sums of money by sending money to the web based copany cryptoocurrancy.com.

10.    Defendant Hollingsworth introduced Plaintiff Pillai to a simple crypto investing project which Plaintiff Pillai could earn money by just holding/staking cryptocurrency securities which he called Coin Staking.

11.    Plaintiff Pillai informed Defendant Hollingsworth that Plaintiff Pillai was new to the cryptocurrency world.

12.    Defendant Hollingsworth provided Plaintiff Pillai details regarding coin staking securities including how it involves buying a certain coin project and locking it in a fixed period of days to get a fixed percentage return that is offered by a stake exchange.

13.    Defendant Hollingsworth told Plaintiff Pillai that Defendant Hollingsworth uses one of the best coin staking websites, cryptoocurrancy.com and Defendant Hollingsworth encouraged Plaintiff Pillai to start staking as soon as possible.

14.    Defendant Hollingsworth made assurances and representations to Plaintiff Pillai that Defendant Hollingsworth would be there to guide Plaintiff Pillai through the process.

15.    Defendant Hollingsworth told Plaintiff Pillai that an initial investment of $10,000.00 would be guaranteed to yield a profit to Plaintiff Pillai of up to $120,000.00 within a three-month period.

16.     Defendant Hollingsworth informed Plaintiff Pillai that he should create an online account on Cryptoostake.com immediately.

17.     Plaintiff Pillai, on the advice and representations of Defendant Hollingsworth created the online account on which was on May 27, 2022.

18.     Defendant Hollingsworth initially informed Plaintiff Pillai to buy Bitcoin on a platform called CEX Platform, however, Plaintiff Pillai could not complete the transaction on that platform.

19.     Defendant Hollingsworth then informed Plaintiff Pillai that Plaintiff Pillai should purchase Bitcoin through Plaintiff Pillai's Cash App account.

20.     On May 28, 22, Defendant Hollingsworth asked Plaintiff Pillai if Defendant Hollingsworth could communicate with Plaintiff Pillai through WhatsApp.

21.     Defendant Hollingsworth informed Plaintiff Pillai that WhatsApp was a more secure communications platform.

22.     Defendant Hollingsworth sent Plaintiff Pillai his WhatsApp number, which (is) was (908) 652-3700.

23.     From that point forward, Defendant Hollingsworth and Plaintiff Pillai switched their texting conversations to WhatsApp.

24.     Over the next few months via WhatsApp chats, Defendant Hollingsworth gave Plaintiff Pillai step-by-step instructions on how to takeout money from Plaintiff Pillai's personal bank account and take those funds to local so-called Bitcoin ATMs

to buy Bitcoin. then transfer the purchase to the Bitcoin.com wallet app on Plaintiff Pillai's phone and watch the funds grow on Cryptoostake.com.

25.    Plaintiff Pillai and Defendant Hollingsworth exchanged screenshots of their Cryptoostake.com accounts and Defendant Hollingsworth showed Plaintiff Pillai how to buy, deposit, and stake coins.

26.    Plaintiff Pillai informed Defendant Hollingsworth that Plaintiff Pillai could only invest a small amount and made his first investment of $1000.00 on May 28. 2022.

27.    Based on the representations of Defendant Hollingsworth, Plaintiff Pillai using the platform cryptoostake.com purchased ALPHA coin as recommended by Defendant Hollingsworth.

28.    This first investment was done via Cash App. Due to Bitcoin fees, which Defendant Hollingsworth failed to disclose to Plaintiff Pillai, the initial $1000.00 investment was quickly reduced to $900.00.

29.    Defendant Hollingsworth informed Plaintiff Pillai Defendant Hollingsworth that Defendant Hollingsworth had personally staked $405,000.00 and was "waiting" for a minimum profit of $250,000.00 after 6 months of staking.

30.    When Plaintiff Pillai asked Defendant Hollingsworth how Plaintiff Pillai could cash out after the staking period was over, and how his return on investment gets sent to his bank, Defendant Hollingsworth informed Plaintiff Pillai these funds

would be released back to his bitcoin wallet app or Coinbase exchange which could be converted to USD, then sent directly to his bank account.

31.   Plaintiff Pillai asked Defendant Hollingsworth if there would be tax and/or fees associated with that type of transaction, and Defendant Hollingsworth falsely stated to Plaintiff Pillai that the only tax was a very minimal tax of three percent (3%).  This was not true.

32.   Defendant Hollingsworth informed Plaintiff Pillai that if Plaintiff Pillai should do bigger stakes and that it would be easier to do it through BTC ATMs, as Plaintiff Pillai could purchase up to $20,000 per day using two or three different Bitcoin ATMS which would save time and avoid bank and credit card issues.

33.   Plaintiff Pillai informed Defendant Hollingsworth Plaintiff Pillai did not have that kind of money to spend or invest however, Defendant Hollingsworth repeatedly falsely represented to Plaintiff Pillai that the more money Plaintiff Pillai invested the better chance Plaintiff Pillai had to be the next next crypto millionaire.

34.   Plaintiff Pillai did notice his initial investment of $900.00 increased to $985.00 after 24 hours on the Cryptoostake.com platform.

35.   Defendant Hollingsworth then represented to Plaintiff Hollingsworth that this was a good time to invest more at least $10,000.00 on at least two (2) coins and watch his profits go really high but $15,000.00 would be the perfect start.

36.     Defendant Hollingsworth informed Plaintiff Pillai that Plaintiff Pillai could take out his profits in two weeks' time if Plaintiff Pillai wanted to pay off bills.

37.     Defendant Hollingsworth represented to Plaintiff Pillai could re-invest again later for a larger amount and subsequent profits.

38.     Plaintiff Pillai informed Defendant Hollingsworth that Plaintiff Pillai was concerned about losing large sums of money if Plaintiff Pillai invested more because Plaintiff Pillai heard on the news how the crypto-company Celsius exchange went bankrupt.

39.     Defendant Hollingsworth, using deceit, fasley reassured Plaintiff Pillai that Plaintiff Pillai would not lose money since Defendant Hollingsworth had a half a million dollars in staking and it is safe.

40.     Defendant Hollingsworth also informed Plaintiff Pillai that capital protection existed on all stakes and therefore Plaintiff Pillai would lose at most two percent of his investment 2% if the market "went down".

41.     Defendant Hollingsworth repeatedly assured Plaintiff Pillai that most people do not have financial freedom because they fear taking risks and worry too much about taking bold steps and that Plaintiff Pillai should worry less.

42.     After this reassurance, Defendant Hollingsworth recommended to Plaintiff Pillai that if Plaintiff Pillai put down $15,000.000, Plaintiff Pillai could generate a profit of at least $5,000.00 to $7,000.00.

43.    Defendant Hollingsworth falsely represented to Plaintiff Pillai that the withdrawal process was simple and fast, and Defendant Hollingsworth would guide Plaintiff Pillai through the process of withdrawing the bitcoin and converting it to United States currency that would be deposited into Plaintiff Pillai's bank account.

44.    Defendant Hollingsworth informed Plaintiff Pillai if he staked $15,000.00 on 3 coins the returns would be five (5) times as much.

45.    Plaintiff Pillai, relying in Defendant Hollingsworth's false and deceitful assertions, decided to invest another $5000.00 on ALPHA coin on June 5, 2022.

46.    Plaintiff Pillai initially tried to use Cash App to avoid the crypto currency ATMs which were always located on less-than-safe areas, however, the maximum amount of BTC Plaintiff Pillai could buy on Cash App in one day was limited to $2000.00 so Plaintiff Pillai decided to try Defendant Hollingsworth's recommendation of using local bitcoin ATMs.

47.    Defendant Hollingsworth provided Plaintiff Pillai street addresses where the bitcoin ATMs were located.  Defendant Hollingsworth also showed Plaintiff Pillai a screenshot how Defendant Hollingsworth allegedly purchased $49,000.00 of bitcoin in three (3) days using various local ATMS and represented that it was convenient and easy way to transfer funds to his bitcoin wallet.

48.    Defendant Hollingsworth represented to Plaintiff Pillai that the cryptoostakes.com wallet was "one of best bitcoin wallets in the world."

49.     Defendant Hollingsworth then instructed Plaintiff Pillai to download this wallet at bitcoin.com and create an account that allowed the sending of up to $100,000.00 at once from the Bitcoin ATMs to Plaintiff Pillai's bitcoin wallet. That amount would then transfer to the Cryptoostake.com platform.

50.     Plaintiff Pillai then invested another $5000.00 on June 6, 2022, for AVAX coin.

51.     Defendant Hollingsworth then informed Plaintiff Pillai that Plaintiff Pillai was "slacking", and that Plaintiff Pillai was his only client and "stake student" that did not have three (3) coins staked.

52.     Defendant Hollingsworth informed Plaintiff Pillai that he wanted all of his "students" in this first class to be uniform.

53.     Because of Defendant Hollingsworth's prodding, Plaintiff Pillai decided to invest another $5000.00 on SOL coin as Defendant Hollingsworth advised on June 9, 2022.

54.     Defendant Hollingsworth represented to Plaintiff Pillai that the staking period would be 15 days for those three (30 coins.

55.     Defendant Hollingsworth then falsely represented to Plaintiff Pillai that there was an "even better opportunity" with bitcoin coin named ERN but it would cost Plaintiff Pillai $25,000.00 to invest, but the returns would be even higher.

56.     Defendant Hollingsworth told Plaintiff Pillai that Defendant Hollingsworth is making it mandatory that total stakes for his students be at least $40,000.00 and each student meets a minimum in ERN of $20,000.

57.     Each day, Plaintiff Pillai would go to different bitcoin ATMs on his lunch breaks or after work and put in cash to buy Bitcoins and waited for them to be verified on his BTC wallet on his phone.

58.     There were substantial fees that each bitcoin ATM charged Plaintiff Pillai at every visit and each bitcoin ATM had limits.

59.     Plaintiff Pillai informed Defendant Hollingsworth that he was nervous to wanted Defendant Hollingsworth to instruct him ahow to withdraw his funds. Defendant Hollingsworth assured Plaintiff Pillai there was no need to be nervous.

60.     On the day that Plaintiff Pillai was supposed to receive his funds, Defendant Hollingsworth informed Plaintiff Pillai for the first time about so-called "gas fees which covers taxes and minor charges".

61.     Defendant Hollingsworth informed Plaintiff Pillai that he could make withdrawals by 1 p.m. that afternoon, and that his funds to be released were now at $251,650.00.

62.     Defendant Hollingsworth informed Plaintiff Pillai to wait for the first emails from the Cryptoostake.com company.

63.    Plaintiff Pillai asked Defendant Hollingsworth what the typical percentage would be for the so-called gas fees.

64.    Defendant Hollingsworth represented to Plaintiff Pillai that the amount of the gas fees would depends on current market rates which Defendant Hollingsworth represented to be usually fourteen to nineteen percent.

65.    Defendant Hollingsworth then, for the first time, informed Plaintiff Pillai ten percent (10%) would go to taxes, and rest of the gas fees would go to service charges and that staking does not deduct taxes because the funds get locked until it gets to the bitcoin wallet.

66.    Defendant Hollingsworth represented to Plaintiff Pillai that the reason for the so-called "gas fees" was for cash protection and full funds delivery.

67.    Defendant Hollingsworth then disclosed to Plaintiff Pillai for the first time that Plaintiff Pillai would have to take out more cash from his bank to get these gas fees paid at various bitcoin ATMs.

68.    As it was the first time Plaintiff Pillai learned of this from Defendant Hollingsworth, Plaintiff Pillai was understandably confused.

69.    Defendant Hollingsworth represented to Plaintiff Pillai that what he was proposing to Plaintiff Pillai was the "global standard" for staking.

70.    Plaintiff Pillai informed Defendant Hollingsworth that based on previous representations to him from Defendant Hollingsworth, he understood that the

released funds would be deposited to Plaintiff Pillai's bitcoin wallet to then to his banking account as Defendant Hollingsworth had represented to Plaintiff Pillai at beginning of the staking when Plaintiff Pillai had directly asked Defendant Hollingsworth how retrieval of his funds would work.

71.    Plaintiff Pillai received an email from the Cryptoostake.com stating that his "gas fee" would be 15.7% of total stakes which amounted to $39,420.00 and Plaintiff Pillai would have to pay this amount in order to receive his funds of $251,650.00.

72.    The $39,420.00 would be paid from Plaintiff Pillai and not deducted from his alleged "profits".

73.    Prior to Plaintiff Pillai's attempt to remove the alleged "profits", neither Defendant Hollingsworth nor Crypoostake.com ever informed Plaintiff Pillai of any time limit or deadline that Plaintiff Pillai had to pay this gas fee in order to get his funds.

74.    For the next four days after receiving the email, Plaintiff Pillai again took out more cash from his local banks and went to local bitcoin ATMs to try to pay this $39,420.00gas fee.

75.    Plaintiff Pillai got all of the gas fees paid in four days, and completed these transactions by Friday June 24, 2022, around 4 p.m.

76.    However, Plaintiff Pillai received an email from Cryptoostake.com on Saturday, June 25 stating that "Due to inflation the updated gas fee was now 27.5%

and after subtracting the 15.7% that Plaintiff Pillai had previously paid, his pending gas fee was now another $23,319.00.

77.    The email informed Plaintiff Pillai, that amount must be paid within one week on Friday, July 1, 202 by 12 p.m.   This was the first time that a deadline was explicitly given to Plaintiff Pillai.

78.    Plaintiff Pillai was understandably very upset when Plaintiff Pillai learned that Plaintiff Pillai now allegedly owed an "updated gas fee" of $23,319.00 due to supposedly missing an undisclosed deadline of Friday, June 24, 2022.

79.    Plaintiff Pillai had no choice but to try to get this amount paid off ($23,319.00) to get his funds released and thus, paid that fee prior to the one-week deadline.

80.    Plaintiff Pillai was determined to make these payments prior to their deadline and Plaintiff Pillai was able to complete this by June 29, 2022.   This amount was not just $23,319.00 but was closer to $38,000.00 due to all the extra fees involved at various bitcoin ATMs.

81.    Plaintiff Pillai continued to borrow money from different sources including close friends, credit card cash advances, and life insurance policy benefits.

82.    Defendant Hollingsworth kept pressuring Plaintiff Pillai to come up with "solutions" to get this money fast and reassured Plaintiff Pillai that it would all work out and Plaintiff Pillai would have his funds released.

83.     Plaintiff Pillai even asked Defendant Hollingsworth if Plaintiff Pillai could borrow some money to help pay the undisclosed gas fees.

84.     Defendant Hollingsworth told Plaintiff Pillai that Defendant Hollingsworth normally does not loan students, but Defendant Hollingsworth would try to see how much Defendant Hollingsworth could loan Plaintiff Pillai.

85.     Defendant Hollingsworth informed Plaintiff Pillai that Defendant Hollingsworth could "come up with" $4,000.00, and Plaintiff Pillai would have to come up with the rest of $25,000.00 for the fees that Defendant Hollingsworth suppressed and failed to disclose to Plaintiff Pillai.

86.     Once Plaintiff Pillai completed the updated gas fee, Plaintiff Pillai was expecting his $251,000.00 in funds to be released only to get another email from Cryptoostake.com stating that Plaintiff Pillai had to provide a five (5) digit PIN number to release his funds.

87.     Plaintiff Pillai had no idea what this email meant and sent forwarded the email to Defendant Hollingsworth.

88.     Defendant Hollingsworth's response to the email was "Shit!! This totally escaped me, It's really your first time and you have no withdrawals in yet, this is a cause to worry."

89.     Defendant Hollingsworth represented to Plaintiff Pillai that another payment would have to be made to get the PIN fee, but that this is usually the LAST STEP

14

and once Plaintiff Pillai paid the PIN fee he would be and sent a PIN number and the transfer of his "profits" would authorize immediately.

90.   Plaintiff Pillai informed Defendant Hollingsworth that Plaintiff Pillai could not keep coming up with money to pay these random fees and that it was ridiculous because Plaintiff Pillai had no money left to get out this supposed huge sum of money that was waiting for him.

91.   Defendant Hollingsworth falsely informed Plaintiff Pillai that there was no need to panic, and that Defendant Hollingsworth would "help" Plaintiff Pillai.

92.   Plaintiff Pillai then received an email on June 30, 2022, from Cryptoostake.com stating that Plaintiff Pillai would have to pay a "PIN fee" of $40,218.00 and submit his phone number so the PIN could be texted to Plaintiff Pillai.

93.   Plaintiff Pillai was understandably in shock that Plaintiff Pillai would have to pay another $40,000.00, when Plaintiff Pillai had just paid $38,000.00 earlier that week.

94.   Plaintiff Pillai informed Defendant Hollingsworth that at this point Plaintiff Pillai could not make any profit from this to all the extra fees that were added.

95.   Defendant Hollingsworth informed Plaintiff Pillai that he could lend Plaintiff Pillai another $6,000.00 for a total of $10,000 that Plaintiff Pillai could borrow from Defendant Hollingsworth.

96.    Plaintiff Pillai pointily asked Defendant Hollingsworth why Defendant Hollingsworth does this and helps all people with instructions and classes.

97.    Defendant Hollingsworth, for the first time since their dealings began, informed Plaintiff Pillai at the end of each year, Defendant Hollingsworth receives a bonus percentage from Cryptoostake.com for each account he gets opened on cryptoostakes.com.

98.    Plaintiff Pillai informed Defendant Hollingsworth that Plaintiff Pillai felt like this company was scamming people and not being upfront with costs and that all Plaintiff Pillai wanted back was his initial investment and that Plaintiff Pillai didn't need the profits.

99.    Defendant Hollingsworth informed Plaintiff Pillai no company returns capital on investments when transfer of a total profit is already on its way.

100.   Defendant Hollingsworth informed Plaintiff Pillai this scheme in which he involved Plaintiff Pillai was not a scam.

101.   At this point, Plaintiff Pillai had one week to pay another $40,218.00 which was actually more when bitcoin ATM fees were factored in.

102.   Defendant Hollingsworth continued to tell Plaintiff Pillai that $251,000.00 would make this all better.

103.   However, Plaintiff Pillai informed Defendant Hollingsworth it's not going to be $251,000.00 because Plaintiff Pillai had so many people to pay back, plus Plaintiff Pillai accrued several thousand dollars in bitcoin ATM fees.

104.   Plaintiff Pillai asked Defendant Hollingsworth again if this would be the "last step" because Plaintiff Pillai thought he had already performed the "last step" twice and Defendant Hollingsworth again assured Plaintiff Pillai AGAIN "Yes, it's the very last step, ... give you a million percent."

105.   Plaintiff Pillai informed Defendant Hollingsworth that Plaintiff Pillai wished Plaintiff Pillai could speak to customer service at Cryptoostake.com on the phone to ask questions and get answers but Defendant Hollingsworth said that communication with cryptoostake.com could only be done either through email or via Defendant Hollingsworth.

106.   Defendant Hollingsworth informed Plaintiff Pillai that there are managers of Cryptoostake.com including Defendant Hollingsworth.

107.   On July 7, 2022, Plaintiff Pillai begged Defendant Hollingsworth to talk to Plaintiff Pillai on the phone for a few minutes, but Defendant Hollingsworth responded that Defendant Hollingsworth can only talk via text.

108.   Plaintiff Pillai wanted to talk to Defendant Hollingsworth on the phone to make sure Defendant Hollingsworth was a real person and who Defendant Hollingsworth said Defendant Hollingsworth was, but Defendant Hollingsworth

said that Defendant Hollingsworth was too busy with other clients and would only speak by phone with "premium members" and would speak via text only for new students such as Plaintiff Pillai.

109.   Plaintiff Pillai asked Defendant Hollingsworth why there were deadlines and if Plaintiff Pillai could email Cryptoostake.com himself and ask for an extension on the deadline for PIN Fee.

110.   In response Defendant Hollingsworth informed Plaintiff Pillai they would likely give Plaintiff Pillai a 24-hour extension.

111.   Defendant Hollingsworth supposedly wrote an email on Plaintiff Pillai's behalf to Cryptoostake.com and copied Plaintiff Pillai on it.

112.   Plaintiff Pillai also wrote an email requesting the extension.  Plaintiff Pillai received a reply back from the company stating Plaintiff Pillai could have only a 24-hour extension.

113.   Defendant Hollingsworth informed Plaintiff Pillai that the 24-hour extension was because of his "starter" account type, but since Defendant Hollingsworth was advanced, Defendant Hollingsworth would have received an extension of three days.

114.   Plaintiff Pillai got as much money as Plaintiff Pillai could and asked Defendant Hollingsworth to send a loan of $4,000.00 to cover the balance which Defendant Hollingsworth did, but Defendant Hollingsworth took longer than expected knowing that there was a deadline.

115.  At this point Defendant Hollingsworth made fraudulent statements that assured Plaintiff Pillai that his funds would be delivered since all fees were covered.

116.  Despite the assurances, Plaintiff Pillai received another email from Cryptoostake.com stating that Plaintiff Pillai had a new PIN fee expiration time limit and Plaintiff Pillai now owed another $19,575.00.

117.  Plaintiff Pillai was so furious when Plaintiff Pillai received this email and Plaintiff Pillai forwarded Defendant Hollingsworth the email Plaintiff Pillai just received and Defendant Hollingsworth wrote back "F*ck, d*mn we totally messed the timing, it seems 12 noon your time not 6pm."

118.  Defendant Hollingsworth instructed Plaintiff Pillai to email Cryptoostake.com and inform them that Defendant Hollingsworth did not know the extension was at noon and not at end of the end of the business day which would have been 5pm.

119.  Plaintiff Pillai informed Defendant Hollingsworth they did not give Plaintiff Pillai a specific time to pay the fees off again, but Plaintiff Pillai had sent his portion at 12:05pm and Defendant Hollingsworth sent his portion after this at about 12:30pm so the deadline was missed deadline again by 30 minutes.

120.  Defendant Hollingsworth continued to falsely reassure Plaintiff Pillai that Plaintiff Pillai would get his money and to stay strong and positive.

121. Defendant Hollingsworth supposedly also wrote an email to Cryptoostake.com stating that this Plaintiff Pillai was one of his first time stakers and that he had missed the deadline and to find a solution to this problem so his new client can continue to use the Cryptoostake.com.

122. Defendant Hollingsworth then informed Plaintiff Pillai that it was really not Cryptoostake.com's fault because Plaintiff Pillai had not paid his fees on time.

123. Plaintiff Pillai also wrote an email to Cryptoostake.com about their "24-hour extension" not being clear.

124. Plaintiff Pillai received an email back from Cryptoostake.com apologizing for his difficult situation, but no exceptions could be made.   In their email they also reassured Plaintiff Pillai that his $251,000.00 would be released as soon as Plaintiff Pillai paid the updated PIN fee.

125. This was $19,575.00 which Plaintiff Pillai worked on again for another week to pay off and used more credit card cash advances and loans from friends.

126. Finally on July 13, 2022, Plaintiff Pillai paid the updated PIN fee and was informed that his PIN number will be sent to Plaintiff Pillai to finalize his withdrawals.

127. Plaintiff Pillai received a 5-digit PIN number via text which Plaintiff Pillai sent back to them according to the instructions then waited patiently for his funds to be released.

128.   Instead, Plaintiff Pillai got an email stating that his bitcoin wallet was "unregistered and unsecured" and hasn't received over $200,000.00 in crypto before and must pass through an encryption process by them to allow it to be fully safe for Plaintiff Pillai and free from all crypto hacks.

129.   The email stated his bitcoin failed to deliver because the wallet was not registered with Cryptoostake.com and the registration fee for this would be $30,000.00.

130.   The email from Cryproostake.com informed Plaintiff Pillai that this amount was due to the high amount of funds the wallet will be receiving time to time.

131.   The email informed Plaintiff Pillai that the fee must be paid in a maximum of one to three payments to another wallet registration address and that if the fee was paid in more than 3 payments it would be invalid.  The email also imposed a one-week deadline for payment of the new fees, otherwise the price will be updated again.

132.   Upon receipt of that email, Plaintiff Pillai texted Defendant Hollingsworth again and informed Defendant Hollingsworth that Defendant Hollingsworth had reassured Plaintiff Pillai that we had already done the "last step" few times and that Plaintiff Pillai was even more mad and upset and that all of these steps should been explicitly stated to Plaintiff Pillai before Plaintiff Pillai started staking coins.

133.    Defendant Hollingsworth wrote back and acted as if Defendant Hollingsworth did not know this was Plaintiff Pillai's first time "staking" and inquired if Plaintiff Pillai had ever gotten a huge volume of crypto with this wallet before even though Defendant Hollingsworth was the one that informed Plaintiff Pillai to get this wallet.

134.    Defendant Hollingsworth informed Plaintiff Pillai these are basics. Plaintiff Pillai informed Defendant Hollingsworth that Defendant Hollingsworth knew all this before and should have disclosed that information.

135.    Defendant Hollingsworth informed Plaintiff Pillai that Plaintiff Pillai cannot blame Defendant Hollingsworth because Defendant Hollingsworth has so many clients and that sometimes, Defendant Hollingsworth gets people's information mixed up in his head.

136.    Plaintiff Pillai informed Defendant Hollingsworth there is no way Plaintiff Pillai would have known any of this because are no written instructions anywhere on Cryptoostake.com website.

137.    Defendant Hollingsworth proceeded to tell Plaintiff Pillai to get 2 payments of $15,000.00 and another $8,000.00 for fees together to pay off as soon as possible and Defendant Hollingsworth would try to loan Plaintiff Pillai money.

138.    Plaintiff Pillai informed Defendant Hollingsworth again Plaintiff Pillai had no money left and the entire thing felt like extortion.

139.   Defendant Hollingsworth again fraudulently told Plaintiff Pillai this was last step, and that Plaintiff Pillai was only $30,000.00 away from collecting the $251,000.00.

140.   Plaintiff Pillai asked Defendant Hollingsworth what would stop Cryptoostake.com from asking for more fees, and in response, Defendant Hollingsworth represented to Plaintiff Pillai that it would be illegal for Cryptoostake.com to ask for more fees once his wallet is registered.

141.   Plaintiff Pillai informed Defendant Hollingsworth if he had known any of these things before investing, Plaintiff Pillai would never have invested any money into this.

142.   Plaintiff Pillai informed Defendant Hollingsworth that Plaintiff Pillai had lost everything including his peace of mind, which is priceless.

143.   In response, Defendant Hollingsworth represented to Plaintiff Pillai that Plaintiff Pillai would be happy when Plaintiff Pillai received his (illusory) funds.

144.   Plaintiff Pillai informed Defendant Hollingsworth this money was not worth the all stress and heartache he had went through to that point, and it would just be a sense of relief if Plaintiff Pillai ever got his funds back.

145.   Defendant Hollingsworth continued to tell Plaintiff Pillai that Plaintiff Pillai was brave, and Defendant Hollingsworth appreciates all his efforts, but that Plaintiff Pillai had to get this $38,000.00 together to get the funds.

146. Plaintiff Pillai reminded Defendant Hollingsworth that Defendant Hollingsworth kept telling Plaintiff Pillai this was "last step" for a month but there was always another last step.

147. At this point, Plaintiff Pillai realized he had spent about $197,000.00 in investments and bitcoin ATM fees, not to mention the sleepless nights, high stress, not eating, 10-to-15-pound weight loss, constant worrying, crying and praying that this nightmare would end.

148. To date, Plaintiff Pillai has still not received his monies promised by Defendant Hollingsworth.

149. The digital assets sold and marketed by Defendant Hollingsworth meets the definition of a security has determined by the *Howey* Test.

150. The *Howey* Test requires that the is (1) an investment of money (2) in a common enterprise, and (3) with a reasonable expectation of profit to be derived from the efforts of others.

151. Because the digital assets sold by cryptoostakes.com though its agent Defendant Hollingsworth are securities, this action may be brought by Plaintiff Pillai pursuant to The Securities Act of 1933 as codified at 15 U.S.C. § 77a *et seq*.

152. Plaintiff Pillai, upon the deceitful and fraudulent representations of Defendant Hollingsworth, invested monies into the common enterprise of cryptoostakes.com, and reasonably expected profits from those investments.

153.   Hence, this lawsuit.

## COUNT I

## VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT

154.   Plaintiff Pillai further alleges:

155.   Cryptoostakes.com is a "seller" within the meaning of 15 U.S.C. § 77l(a) because their agent Defendant Hollingsworth solicited Plaintiff Pillai's investments.

156.   The coins marketed and sold by cryptoostake.com constitute investment contracts and are therefore subject to federal securities laws, including the registration requirements promulgated thereunder.

157.   Defendant Hollingsworth, in the offer and sale of crytoostake.com securities, by the use of the means and instruments of transportation and communication in interstate commerce or by use of the mails, directly or indirectly, employed devices, schemes, and artifices to defraud.

158.   In inducing Plaintiff Pillai to purchase cryptoostake.com securities and as part of a scheme to defraud, Defendant Hollingsworth made false and misleading statements of material fact and omitted to state material facts to Plaintiff Pillai as more fully described above.

159.   Defendant Hollingsworth engaged in the conduct alleged herein knowingly or with reckless disregard for the truth.

160.   Defendant Hollingsworth, on behalf of cryptoostakes.com used material misstatements regarding the amounts Plaintiff Pillai would have to invest, the amount of fees that would be charged, and the return on investment all to to induce Plaintiff Pillai to purchase a security that, but for the misstatements and deceit by Defendant Hollingsworth, Plaintiff Pillai would not have purchased.

161.   As a direct and proximate result of the foregoing, Defendant Hollingsworth has violated Sections 17(a)(1) of the Securities Act, and in doing so, caused injury to Plaintiff Pillai.

162.   Defendant Hollingsworth is subject to liability by virtue of his position with cryptoostake.com as a manager.

163.   Accordingly, Defendant Hollingsworth is a "controlling person" of cryptoostake.com within the meaning of Section 15(a) of The Securities Act.

164.   Plaintiff Pillai suffered damages as a result of Defendant Hollingsworth's violation of Section 15(a) of The Securities Act.

165.   Defendant Hollingsworth, at all times relevant and material acted an agent on behalf of crytpoostak.com and indeed, held himself out to Plaintiff Pillai as a manager of cryptoostake.com.

**COUNT III**
**Fraudulent Suppression**

**(As to Defendant Hollingsworth)**

166.   Plaintiff Pillai adopts each and every preceding factual allegation as predicate for this Count I, and further alleges:

167.   Defendant Hollingsworth, in the manner, at the times, and through the actions described in the factual allegations did fraudulent suppress material facts from Plaintiff Pillai.

168.   At the inception of their relationship, Defendant Hollingsworth fraudulent suppressed the fact that he in fact had a financial incentive with cryptoosake.com to bring on as many "stakers" as possible.

169.   Defendant Hollingsworth fraudulently suppressed from Plaintiff Pillai that there existed hidden fees associated with attempting to recover the funds from cryptoostake.com.

170.   Defendant Hollingsworth suppressed these material statements and facts from Plaintiff Pillai despite the confidential relationship that existed between Defendant Hollingsworth and Plaintiff Pillai.

171.   As a result of the afore-described suppression of material facts by Defendant Hollingsworth, Plaintiff Pillai has suffered actual damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Pillai prays for judgment against Defendant Hollingsworth for this Count.  Plaintiff Pillai further

prays for the award of compensatory and punitive damages in an amount to be determined by a struck jury.

## COUNT IV
## Deceit

172.   Plaintiff Pillai adopts each and every preceding factual allegation as predicate for this Count, and further alleges:

173.   Defendant Hollingsworth through his communications with Plaintiff Pillai as afore-described deceived Plaintiff Pillai into expending large sums of money.

174.   Defendant Hollingsworth, though false statements regarding returns on investments, continually convinced Plaintiff Pillai to pay more and more money to an entity in which Defendant Hollingsworth has a financial stake.

175.   As a result of Defendant Hollingsworth's deceitful and false statements to Plaintiff Pillai, Plaintiff Pillai has been made to suffer actual damages.

176.   The actions of Defendant Hollingsworth in making these deceitful statements were willful and done with aforethought and disregard.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Pillai prays for judgment against Defendant Hollingsworth for this Count II.  Plaintiff Pillai further prays for the award of compensatory and punitive damages in an amount to be determined by a struck jury.

## COUNT V
## Fraud

177.   Plaintiff Pillai adopts each and every preceding factual allegation as predicate

for this Count, and further alleges:

178.   Defendant Hollingsworth's dealings with Plaintiff Pillai, as described in the

preceding factual allegations and Counts constitute fraud.

179.   Defendant Hollingsworth deceived Plaintiff Pillai into taking a financial

position that Plaintiff Pillai would have otherwise not taken absent the deception by

Plaintiff Pillai.

180.   Defendant Hollingsworth suppressed material facts from Plaintiff Pillai that

caused Plaintiff Pillai to material alter his position and decision making.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Pillai prays for

judgment against Defendant Hollingsworth for each and every act of wrongdoing by

Defendant Hollingsworth against Plaintiff Pillai.  Plaintiff Pillai further prays for all

damages both compensatory and punitive allowed by federal statutes.

## JURY DEMAND

181.   Plaintiff Pillai demands trial by a struck jury on all triable issues.

Respectfully submitted,

_s/ H. Gregory Harp_
H. Gregory Harp (asb-0904-t75h)
GREGORY HARP LLC

810 Watterson Curve
Trussville, Alabama 35173
205.291.0088
gh@gregoryharplaw.com